**BRADFORD SCHOOLS, INC. and
Minneapolis Business College,
Inc., Respondents,**

v.

**Opal MAETZOLD, Appellant.**

**No. C4–86–1116.**

Court of Appeals of Minnesota.

Dec. 16, 1986.

Michael R. Cunningham, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for respondents.

Lawrence R. Altman, Courey, Schwinn & Kodadek, P.A., Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

**OPINION**

FORSBERG, Judge.

Respondents Bradford Schools, Inc., and Minneapolis Business College, Inc. (hereinafter Bradford Schools), brought this action against appellant Opal Maetzold for breach of contract, breach of warranty, and negligent and fraudulent misrepresentation. The action arose out of a sale of stock in which Bradford Schools purchased all of the capital stock of the Minneapolis Business College from Maetzold. The trial court granted partial summary judgment against Maetzold on the breach of contract and warranty claims. Maetzold appeals. We reverse and remand.

**FACTS**

Maetzold was the sole shareholder, president, member of the board of directors, and chief controlling officer of the Minneapolis Business College (the College). On August 31, 1981, Bradford Schools paid Maetzold $147,500 for all of the issued and outstanding capital stock of the College pursuant to a Stock Purchase Agreement.

Maetzold made a number of warranties and representations concerning the College's financial condition, liabilities, and financial assistance programs. These representations were embodied in the Stock Purchase Agreement as follows:

a. That the financial statements of the Minneapolis Business College fairly presented the financial condition of the Minneapolis Business College;

b. That the Minneapolis Business College had no material liabilities, absolute or contingent, which were not included on the financial statements;

c. That [to the best of Seller's knowledge] there were no claims or bases for asserting any claims against the Minne-

apolis Business College which would involve a material liability not set forth on the financial statements;

d. That [to the best of Seller's knowledge] there were no actions or investigations pending or threatened against the Minneapolis Business College;

e. That the Minneapolis Business College had complied with all laws, rules, regulations and orders applicable to its business; and

f. That the Minneapolis Business College was approved for various financial assistance programs, including Basic Educational Opportunity Grants and federally insured student loans, and that there were no violations relating to any such financial assistance programs.

Section 6.2 of the Stock Purchase Agreement was an indemnification provision. Pursuant to this section, Maetzold agreed to indemnify Bradford Schools and to hold them harmless from:

all damages, losses, obligations, liabilities, * * * costs, and expenses, including, without limitation, reasonable fees, and costs and expenses incident to any suit, action [or] investigation * * * sustained, incurred or required to be paid by Minneapolis Business School or [Bradford Schools] by reason of any representation, warranty or covenant made by Seller in this Agreement being untrue, incorrect, or breached in any material respect and not waived in writing by Buyer.

Respondents then brought this claim for indemnification of the monies paid. They subsequently moved the court for partial summary judgment on the breach of contract and warranty claims. In support of their motion, respondents submitted the affidavit of Jim Zillman, an employee of Bradford Schools from 1977, and President of the College from September 1, 1981 to October 15, 1984. In his affidavit, Zillman stated that:

4. While the Minneapolis Business College was under the ownership and control of Opal Maetzold, and prior to the stock purchase transaction between Bradford Schools and Maetzold, informa-tion submitted by Maetzold to the United States Department of Education inflated the true cost of education at the Minneapolis Business College, overstated the number of program hours certain students were enrolled in at the Minneapolis Business College and reflected course hours at the Minneapolis Business College which were not consistent with the course hours listed in the school's catalogs. As a consequence, certain students who should not have qualified for BEOG grants received awards and other students received awards that were erroneously calculated.

5. As a consequence, an investigation of the Minneapolis Business College was conducted which resulted in a liability for BEOG overawards in the amount of $22,762.00 for the school years 1978–79, and 1979–80.

6. * * * Bradford Schools made payment to the United States Department of Education * * * *. This repayment was necessary because Opal Maetzold, as the prior owner and operator of the Minneapolis Business College, had improperly and erroneously calculated BEOG awards and there had been an overpayment of BEOG awards to the Minneapolis Business College during the period it was owned and operated by Maetzold.

* * * * * *

8. While the Minneapolis Business College was under the ownership and control of Opal Maetzold, and prior to the stock purchase transaction between Bradford Schools and Maetzold, the Minneapolis Business College failed to make proper refunds of certain student loans. As a consequence, the Minneapolis Business College became liable for unrefunded student loans for 1978 through August 31, 1981 * * * Attached hereto as Exhibit Four is a listing of the guaranteed student loan refunds which Bradford Schools has been required to make as a result of student withdrawals occurring prior to August 31, 1981.

Maetzold answered, denying respondents' claims. She submitted an affidavit

which essentially denied the allegations contained in Zillman's affidavit.

## ISSUE

Did respondents sustain their burden of proving that there was no genuine issue of material fact to preclude summary judgment?

## ANALYSIS

In granting respondents' motion, the trial court cited Rule 56.05 of the Minnesota Rules of Civil Procedure and quoted *Erickson v. General United Life Insurance Co.*, 256 N.W.2d 255, 259 (Minn.1977), stating:

Defendant Maetzold, by affidavit, suggests that the Minneapolis College of Business did not fail to make proper refunds of student loans, nor did it inflate the true cost of education there so as to result in liabilities. But there are no specific facts provided by defendant to support her opposition to summary judgment. "In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial."

Although this is a proper statement of the law, Rule 56.05 further provides "[i]f he does not so respond, summary judgment, *if appropriate*, shall be entered against him." (Emphasis added.) The Minnesota Supreme Court has enunciated the standard for granting a motion for summary judgment as follows:

A motion for summary judgment may be granted pursuant to Rule 56.03 only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that he is entitled to judgment as a matter of law. It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to him. * * *

Since * * * all factual inferences must be drawn against the movant for summary judgment, it follows that, even where the movant's supporting documents are uncontradicted, they may in themselves be insufficient to sustain his burden of proof.

*Sauter v. Sauter*, 244 Minn. 482, 484–85, 70 N.W.2d 351, 353 (1955) (emphasis in original) (footnotes omitted).

Respondents claim that Maetzold made an unqualified commitment to indemnify and hold Bradford Schools harmless from all obligations and liabilities imposed on the College, irrespective of the reasons why the College was forced to repay the government. This, however, does not accurately state the agreement of the parties. The indemnification provision takes effect only if:

[a] representation, warranty or covenant made by [Maetzold] * * * is untrue, incorrect, or breached in any material respect and not waived in writing by [Bradford Schools].

Respondents did not submit any affidavits or reports from BEOG officials or investigating officers. The file does not contain any depositions or answers to interrogatories. Thus, the evidence presented by respondents at the motion merely asked the court to infer that because the College made certain payments to the government, the loan and grant programs were improperly administered by Maetzold while the Minneapolis Business College was under her control. Since any inferences must be resolved in favor of Maetzold, there is a genuine issue of fact as to whether a representation or warranty regarding the BEOG or other student loans was untrue, incorrect, or breached by Maetzold.

## DECISION

Since respondents did not sustain their burden of proving that there is no genuine issue of material fact, it was error for the trial court to grant summary judgment.

Reversed and remanded.